## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MERCO HOLDINGS, LLC, DETAILMANAGEMENT, LLC, ELITE INVESTMENT PROPERTIES, INC., DAVID MERENSTEIN, and ESTHER MERENSTEIN, *Plaintiffs*, v. ARI BOUSBIB and HELENE IRMANN-BOUSBIB, *Defendants*. | No. 3:20cv1688(MPS) |

## RULING ON MOTION TO DISMISS

This litigation arises out of the parties' failed business relationship.  Plaintiffs David Merenstein, his wife, Esther Merenstein, and their companies - Merco Holdings, LLC, Detailmanagement LLC, and Elite Investment Properties Inc. - bring this diversity action against defendants Ari Bousbib and his wife, Helene Irmann-Bousbib.  In their amended complaint, Plaintiffs allege tortious interference with contract (counts 1-17), "negligent direction of LLCs" (count 18), conversion (count 19), statutory theft in violation of Conn. Gen. Stat. § 52-564 (count 20), breach of fiduciary duty (count 21), fraud (count 22-23), libel (count 24), slander (count 25), and unjust enrichment (count 26).  ECF No. 19.  Defendants move to dismiss Plaintiffs' Amended Complaint in its entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  ECF No. 28.  For the reasons set forth below, the motion is granted as counts 1-17 and 22-23 and denied as to counts 18 and 24-26.

## I.       Background

The following facts are drawn from the Plaintiffs' amended complaint (ECF No. 19) and from documents integral to that complaint, and are accepted as true for the purpose of this ruling.

Plaintiff Esther Merenstein is the sole member of Plaintiff Merco Holdings LLC ("Merco"). ECF No. 19 at 1 ¶ 2. Plaintiff David Merenstein is the sole member of Plaintiff Detailmanagement LLC and also the sole member of Plaintiff Elite Investment Properties. *Id.* at 2 ¶¶ 4, 6.

Defendant Bousbib is in the "business of buying, selling, and maintaining properties in the rental property industry." *Id.* at 79 ¶ 262. Beginning in 2012, Merco and Bousbib "partnered together in a grand business scheme to locate rental real estate properties to purchase, operate, and manage." *Id.* at 3 ¶ 11. Plaintiffs "trusted [Bousbib] with his advice, leadership, business knowledge, and promises made." *Id.* at 79 ¶ 264. "At all times within the business scheme, Plaintiff Merco would provide services, including but not limited to research, discovery, and leg work [i]n finding the properties, locating the real estate deals, and handling the communications and transactions with lenders." *Id.* at 3 ¶ 12. Bousbib "acted as an advisor" and communicated "with the Plaintiffs and/or their representatives in connection with negotiations for the purchase and management" of the rental properties. *Id.* at 79-80 at ¶ 264.

An individual limited liability company was formed for each property purchased ("the Property LLCs"). *Id*. at 3 ¶ 11. The Property LLCs are: Bunker Hill LLC (*id.* at 8 ¶ 13), Austin Heights LLC (*id.* at 12 ¶ 13), Diamond Court LLC (*id.* at 15 ¶ 13), Waterbury Plaza LLC (*id.* at 18 ¶ 13), Valley View Townhouse LLC (*id.* at 22 ¶ 13), Pine Meadow Townhouse LLC (*id.* at 25 ¶ 13), Forest Park Apartment Homes LLC (*id.* at 29 ¶ 13), Briarwood Hills LLC (*id.* at 32 ¶ 13), Hunters Crossing LLC (*id.* at 35 ¶ 13), Renwood Apartments LLC (*id*. at 39 ¶ 13), Oakridge Realty LLC (*id.* at 42 ¶ 13), Brookstone Homes LLC (*id.* at 45 ¶ 13), Alabama Brook LLC (*id.* at 49 ¶ 13), Alabama Brook #2 LLC (*id.* at 49 ¶ 14), Ivy Woods CT LLC (*id.* at 52 ¶ 13), Forest Park

Office Green LLC (*id.* at 55 ¶ 13), Fieldside Apartments LLC (*id.* at 59 ¶ 13), and Seramonte

Estates LLC (id. at 62 ¶ 13).[1]

Operating Agreements

Each Property LLC has an operating agreement setting forth, among other things,

ownership and distributions of returns.[2] *See id.* at 9 ¶ 15.  In all transactions except for one, "Merco

in exchange for its services would acquire a two (2%) interest in each of the separate entities,

calculated based upon the amount [Bousbib] or an entity he controlled invested," along with an

8% return on the 2% interest, and a percentage of all additional income and proceeds after members

were repaid their interests.[3]  *Id.* at 3 ¶ 13.

The majority owner/member of each of the Property LLCs is an LLC ("LLC Majority

Owner") in which Bousbib and/or Helene had a membership interest, including Meknes LLC. *Id.*

at 4-5 ¶ 16.  Bousbib individually had a 1% interest in Diamond Court LLC, Brookstone LLC, and

Ivy Woods LLC.  ECF No. 19 at 15 ¶ 17, *id.* at 46 ¶ 17, *id.* at 53 ¶ 17.

The operating agreements for three of the Property LLCs - Diamond Court LLC (ECF No.

32-1), Fieldside Apartments, LLC (ECF No. 32-2), Ivy Woods, LLC (ECF No. 32-3)[4] - provide

---

[1] The Plaintiffs initially named the Property LLCs as defendants in this action.  After the defendants moved to dismiss for lack of subject matter jurisdiction on the grounds that diversity jurisdiction was lacking, ECF No. 15, Plaintiffs amended their complaint to name just the Bousbibs.  The Plaintiffs thereafter filed suit in Connecticut Superior Court against the Property LLCs and the majority owners of the Property LLCs alleging breach of contract and breach of the implied duty of good faith and fair dealing.  *Merco Holdings LLC v. CT Karka LLC*, HHD-CV21-6149041-S.  The Property LLCs in turn filed suit against the Plaintiffs alleging, among other things, fraud and breach of contract and seeking a declaratory judgment that Merco has no interest in the Property LLCs and that all the property management agreements were terminated in October 2018.  *Brookstone Homes LLC v. Merco Holdings, LLC*, HHD-CV22-6150744-S.

[2] Because the allegations as to each of the Property LLCs are essentially the same, I describe only those as to Bunker Hill LLC.

[3] Merco did not have an ownership interest in Seramonte LLC.  ECF No. 19 at 63 ¶ 17.  Instead Merco was to be paid a sum certain at the time of closing, which, it alleges, failed to occur.  *Id.* at 63 ¶¶17, 19.

[4] Plaintiffs submitted the three operating agreements with their opposition.  "Although courts considering motions to dismiss under Rule 12(b)(6) generally must limit [their] analysis to the four corners of the complaint, they may also consider documents that are incorporated in the complaint by reference." *Ming Hou v. Pat Kwok Lam*, No. 3:16-CV-1592(VAB), 2017 WL 4316394, at *2 (D. Conn. Sept. 27, 2017)(internal quotation marks and citations omitted).  *See Dominion Res. Servs., Inc. v. Alstom Power, Inc.*, No. 3:16-CV-544(JCH), 2016 WL 9383253, at *4 (D. Conn. Nov. 23, 2016) ("The court may also consider documents on which the complaint relies heavily, thereby rendering the

that Bousbib is a 1% owner and also the managing member.[5]   ECF No. 32-1 at 5, 22.   The

agreements further provide in pertinent part:

> The business and affairs of the Company shall be managed by its Managing
> Member . . . .The Managing Member shall each direct, manage and control every
> aspect of the business of the Company to the best of their ability.  Unless authorized
> to do so by this Operating Agreement or the Managing Member, no attorney-in-
> fact, employee or other agent of the Company shall have any power or authority to
> bind the Company in any way, to pledge its credit or render it liable pecuniarily for
> any purpose.

ECF No. 32-1 at 5; ECF No. 32-2 at 5: ECF No. 32-3 at 5.  According to the agreements, "[c]onduct

of the business and affairs of the Company shall be undertaken by its Managing Member" who

shall "have the authority, power and discretion to engage in acts in the interest of and on behalf of

the [LLC]."  ECF No. 32-1 at 6; ECF No. 32-2 at 6; ECF No. 32-3 at 6.  Bousbib signed the

respective agreements both in his individual capacity as a member and on behalf of Meknes, the

LLC Majority Owner.  ECF No. 32-1 at 20; ECF No. 32-2 at 20; ECF No. 32-3 at 24.

Property Management Agreements

As part of the "business scheme," Detailmanagement "provide[d] the management of the

rental properties for the companies acquired."  ECF No. 19 at 4 ¶ 14.  Detailmanagement had

property management agreements with the Property LLCs in which it provided management

services for the rental properties.  *Id.* at 10 ¶ 22.

Bousbib "obtained" operating and management agreements and "lending to purchase the

respective properties[.]"  *Id.* at 80 ¶ 265.  He "instructed the Plaintiffs to sign documents prepared

---

document integral to the complaint.") (internal quotation marks and citations omitted).  "[E]ven when a document is
considered 'integral' to the complaint, it must be clear both that there is no dispute as to the authenticity or accuracy
of the document and that there are no material disputed issues of fact regarding the relevance of the document." *Id.*
(citations omitted).  Because the operating agreements are integral to Plaintiffs' complaint and there is no dispute as
to their authenticity or accuracy, I may consider them in the ruling on this motion.
[5] The Amended Complaint alleges that Bousbib was a 1% owner of the Diamond Court, Brookstone, and Ivy Woods
LLCs but does not allege that Bousbib was a 1% owner of Fieldside Apartments LLC.  The operating agreement for
Fieldside Apartments LLC submitted by the Plaintiffs, however, indicates that Bousbib had a 1% "membership
interest." ECF No. 32-2 at 21.  Therefore, I assume that Bousbib had an ownership interest in these four LLCS.

by [him] and/or his representatives", and "unilaterally modified terms of the deals between the parties." *Id.* Bousbib "owed Plaintiffs a duty of care that a like businessman and owner of ordinary prudence would have exercised under the same circumstances." *Id.* at 69 ¶ 260. He made "false representations regarding the nature, intent and purpose of the Agreements with Plaintiffs, Merco and Detailmanagement" to induce Merco, Detailmanagement, David Merenstein, and Esther Merenstein "to enter into the business transactions, operating agreements, management agreements, and to continue to work under Bousbib and his entities to locate new business deals." *Id.* at 84 ¶ 266. Bousbib knew or should have known that he had "extensive influence" over the Property LLCs and the "Plaintiffs' interest therein due to David Merenstein, Merco's and Detailmanagement's trust and position within the business alliance." *Id.* at 84 ¶ 267. Bousbib knew or should have known that David and Esther Merenstein would rely on his words and actions. *Id.* Plaintiffs relied on "the intentional misrepresentations, statements and conduct of Bousbib, much of which contained dishonesty, all to their detriment." *Id.* at 84 ¶ 268.

<u>Breach of Operating and Property Management Agreements</u>

In January 2019, each Property LLC and its majority owner breached the operating agreement with Merco "a) [b]y refusing the agreement based upon a false premise that the Plaintiff [Merco] signed over its interest; b) [b]y refusing the agreement based upon a false premise that the Plaintiff did not have a monetary investment; and c) [b]y refusing to pay monies due the Plaintiffs under the terms of the agreement." *Id.* at 9-10 ¶ 19. The LLC majority owners and Bousbib "failed and refused to honor the terms of the agreement and refused to honor the Plaintiff's interest in the company." *Id.* at ¶ 20.

Each Property LLC and its majority owner breached the property management agreement with Detailmanagement by "a) [b]y refusing to pay monies due the Plaintiffs under the terms of

the agreement; b) [b]y failing to provide adequate notice to Plaintiff that the management agreement was being terminated; c) [b]y failing to provide notice to Plaintiff that the terms of the management agreement were being altered; and d) [b]y failing and refusing to pay the full compensation owed to the Plaintiff." *Id.* at 10-11 ¶ 25. Despite demand, the Property LLC, its LLC majority owner, and Bousbib "failed and refused to honor the terms of the agreement." *Id.* at 11 ¶ 26. *See id.* at 69 ¶¶ 262a-ff (Bousbib "instructed" each Property LLC "to reject the ownership interests of the Plaintiffs in nonconformance with the Operating Agreement" with Merco and "to reject the management agreement" of Detailmanagement.)

<u>Interference</u>

As to each Property LLC, Bousbib, and in some instances "Bousbib and/or Helene," "intentionally and improperly interfered with the Operating Agreement, threatened Plaintiff, David Merenstein, ousted co-owner Merco as an owner, having interests and rights in the [LLC] without the legal right to do so, and without just compensation." *Id.* at 11 ¶ 27. Bousbib, and in some instances "Bousbib and/or Helene," also "intentionally and improperly interfered with the Management Agreement, threatened the Plaintiff, David Merenstein, ousted Plaintiff, Detailmanagement as manager of the rental units, without proper notice, and failed to compensate Plaintiff for its just compensation." *Id.* at 11 ¶ 28.

<u>Other Conduct</u>

Bousbib "failed to close and deliver monies" owed the Plaintiffs, "failed to turn over books and records upon demand by Plaintiffs," "misrepresented to the Plaintiffs their interests in the ownership of the [Property LLCs]" and "the financial compensation [Plaintiffs] would receive," "hired new inexperienced employees to manage the [Property] LLCs," "caused changes to the Operating Agreements of the [Property LLCs] only on paper to save substantial sums in income

taxes, for audit purposes, to pass audits of Bousbib charity accounts and/or family trusts, and/or to accommodate lenders' preferences to maximize the highest loan amount" and caused David Merenstein's signature to be signed on checks and documents.  *Id*. at 76 ¶¶ 262gg, hh, ii, jj, ll, and nn.

Bousbib "utilized the majority ownership in the [Property] LLCs, the trust that Plaintiffs placed in [him]" along with "threats and intimidation to gain further advantage over Plaintiffs." *Id.* at 80 ¶ 267. Bousbib "acting in concert with the LLC majority owners, took complete control" of the Property LLCs and took "disbursements and fees and/or reinvested those funds that would have proportionally belonged to the Plaintiffs pursuant to the agreements between the parties." *Id.* at 82 ¶¶ 263-64.  He "failed to take necessary action to proceed with the reasonable management of the [Property] LLCs owned properties, despite having ousted Plaintiffs from any and all of their management responsibilities."  *Id.* at 82 ¶ 265.  "The failure to take necessary action to preserve the management of the [Property] LLCs has decreased the values of the properties and decreased the value of the Plaintiffs' interests."  *Id.* at 82 ¶ 266.

Representations

Bousbib, "when he entered into the Operating Agreements and Management Agreements[,] represented that he would act in the best interests of the [Property] LLCs and Plaintiffs" and "act in accordance with the distribution and overall general business scheme" but "[t]hese representations were intentionally false in that [he] intended to use his superior position[] in order to oust the Plaintiffs and cut off their interests in the [Property LLCs] and the management of the properties, for his own use and benefit[.]" *Id.* at 83 ¶¶ 267-269.

Defamatory Statements

"On or about April 30, 2020," Bousbib "communicated in writing false allegations" about

David Merenstein and Detailmanagement to "Seramonte Investors, Jay Stephansky, Steve Binder, Yakov Bodner, David Bodner, and/or Yudi Blumental and Mr. Green, other investors, past and current employees, bankers, mortgage brokers, vendors and/or Federal and State officials." *Id.* at 85-86 ¶ 268.  He "caused to be filed false reports with the police causing the Plaintiff David Merenstein to be arrested for criminal trespass," notice of which was published in the newspaper and on the Internet. *Id.* at 86 ¶ 269.  Bousbib made defamatory statements including that David Merenstein and/or Detailmanagement committed theft in the management of the Property LLCs, mismanaged and failed to properly oversee the Property LLCs, exercised poor "financial control over the [Property LLCs], "lacked operational and financial controls over the [Property LLCs]," and failed to satisfy bank requirements as to a particular Property LLC.  *Id.* at 86-87 ¶¶ 270a-f, h. Bousbib also "published" statements that David Merenstein was "dishonest" and "embezzling monies." *Id.* at 91 ¶ 272i, j.

Retained Property

Bousbib, individually and/or through certain LLCs in which he had an interest, has in his possession snow and landscaping equipment, tools, and vehicles that belong to David Merenstein and/or Detailmanagement and has deprived Plaintiffs of certain monies owed under the agreements. *Id.* at 77 ¶¶ 263-64, *id.* at 78 ¶ 264, *id.* at 92 ¶ 261.

## II.    LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The

Court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id*., and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. C*o., 517 F.3d 104, 115 (2d Cir. 2008). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted); *accord Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

## III.   DISCUSSION

### A.   Tortious Interference

In counts 1-17, one count as to each of the various Property LLCs, Plaintiffs Merco and Detailmanagement allege that Bousbib and/or Helene tortiously interfered in the operating agreements and property management service agreements. Defendants move to dismiss these claims on the grounds that the Plaintiffs have failed to state a claim upon which relief can be granted. Specifically, the Defendants argue that the claims fail because Bousbib was an agent of the Property LLCs and, in any event, Plaintiffs fail to adequately allege that the Defendants engaged in tortious conduct.

Under Connecticut law, "[a] claim for intentional interference with contractual relations requires the plaintiff to establish: (1) the existence of a contractual or beneficial relationship; (2) the defendant's knowledge of that relationship; (3) the defendant's intent to interfere with the relationship; (4) that the interference was tortious; and (5) a loss suffered by the plaintiff that was caused by the defendant's tortious conduct." *Rioux v. Barry*, 283 Conn. 338, 351 (2007). "[I]n an action for tortious interference, not every act that disturbs a contract or business expectancy is actionable.... [F]or a plaintiff successfully to prosecute [an action for tortious interference] it must

prove that the defendant's conduct was in fact tortious. This element may be satisfied by proof that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." *Landmark Inv. Grp., LLC v. CALCO Const. & Dev. Co.*, 318 Conn. 847, 868 (2015)(internal quotation marks and citations omitted).  "The plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without justification." *Id.*  "A claim is made out only when interference resulting in injury to another is wrongful by some measure beyond the fact of the interference itself." *Robert S. Weiss & Associates, Inc. v. Wiederlight*, 208 Conn. 525, 536 (1988).

"[T]he tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two *other* parties." *Wellington Systems, Inc. v. Redding Group, Inc.,* 49 Conn. App. 152, 168 (1998) (emphasis in original; internal quotation marks omitted). "Where the alleged tortfeasor is an agent of one of the contracting parties, and thus indirectly a party to the contract, there can be no liability for such interference." *Taylor v. Maxxim Med., Inc*., No. 3:99CV338(AHN), 2000 WL 630918, at *4 (D. Conn. Mar. 23, 2000).  An exception "applies if the agent did not act legitimately within his scope of duty but used the corporate power improperly for personal gain." *Metcoff v. Lebovics*, 123 Conn. App. 512, 521 (2010) (internal quotation marks and citation omitted).  *See Wood & Bricks, LLC v. TD Dev., LLC*, No. 3:16CV123(MPS), 2018 WL 6605623, at *2 (D. Conn. Dec. 17, 2018) ("[W]here the defendant is an agent of a contractual party, the plaintiff must plead that defendant acted outside the scope of his duty to assert a claim for tortious interference in the agent's individual capacity.")

The Defendants assert that the tortious interference claims fail because the "Plaintiffs allege that Mr. Bousbib is an authorized agent" of the Property LLCs.[6]  ECF No. 29 at 19.  In support,

---

[6] Defendants do not argue that the claims fail because Bousbib is a party to the operating and management agreements. ECF No. 36 at 10 n. 3.

they point to Plaintiffs' allegations regarding Bousbib's influence and control over the Property LLCs.  ECF No. 36 at 6.

I agree as to the counts concerning Diamond Court LLC (count 3), Ivy Woods LLC (count 14), and Fieldside Apartments LLC (count 16) because as to these entities, the operating agreements show that Bousbib was acting as an agent.  *See* ECF Nos. 32-1, 32-2, 32-3 at 5-6. Moreover, the amended complaint does not allege that Bousbib acted outside the scope of his role.[7] "[T]o properly allege this narrow exception, a plaintiff must plead facts demonstrating that the corporate agent acted beyond the scope of his duties and became, essentially, a stranger to the corporation."  *Bell v. Dermatologic Cosm. Labs. LTD*., No. CV116024648, 2012 WL 3104535, at *5 (Conn. Super. Ct. July 3, 2012).  The amended complaint alleges that Bousbib caused the Property LLCs to terminate their agreements with Merco and Detailmanagement.  There are no particularized allegations that this type of decision was outside the scope of his authority as an agent and/or that it was made for personal gain rather than for the benefit of the Property LLCs. Because the complaint fails to provide any specific factual allegations that Bousbib "used his power improperly for his own benefit and that the benefit to the principal played no role in his actions," *Kelly v. Meriden*, 120 F. Supp. 2d 191, 199 (D. Conn. 2000), counts 3, 14, and 16 are dismissed.

As to the Property LLCs in the remaining 14 counts, the amended complaint does not clearly plead that Bousbib was an agent.  Although Plaintiffs allege that Bousbib exerted influence over both the majority owner LLCs and the Property LLCs, there are no specific factual allegations that he was acting as an agent of these Property LLCs.  At this stage, I must accept Plaintiffs'

---

[7] "In determining whether an employee has acted within the scope of employment, courts look to whether the employee's conduct: (1) occurs primarily within the employer's authorized time and space limits; (2) is of the type that the employee is employed to perform; and (3) is motivated, at least in part, by a purpose to serve the employer." *Harp v. King*, 266 Conn. 747, 782–83 (2003).

allegations as true and draw all reasonable inferences in their favor.  The motion to dismiss these counts on the grounds that Bousbib is an agent is denied.

Defendants next argue that the claims fail because Plaintiffs have not adequately pled tortious conduct.  As to this element, the allegations indeed are sparse.  The Amended Complaint alleges only that "Bousbib and/or Helene," "intentionally and improperly interfered with the operating agreement, threatened Plaintiff, David Merenstein, ousted co-owner Merco as an owner, having interests and rights in the [LLC] without the legal right to do so, and without just compensation."  ECF No. 19 at 11 ¶ 27.  Bousbib, and in some instances "Bousbib and/or Helene," also "intentionally and improperly interfered with the management agreement, threatened Plaintiff, David Merenstein, ousted Plaintiff, Detailmanagement as manager of the rental units, without proper notice, and failed to compensate Plaintiff for its just compensation."  *Id.* at 11 ¶ 28.  The allegation that the Defendants "intentionally and improperly interfered" is conclusory.  The allegation that the Defendants "threatened" David Merenstein is vague and does not indicate what specific conduct the Defendants undertook, much less how it figured in their alleged interference with the agreements.  This leaves the allegation that the Defendants "ousted" Merco as an owner, and Detailmanagement as manager, in breach of the operating and property management agreements.  These thin factual allegations fail to sufficiently allege tortious conduct, as opposed to mere interference.  The motion to dismiss is granted as to counts 1-2, 4-13, 15, and 17.

**B.    Count 18:  Negligent Direction of LLCs**

In count 18, Plaintiffs assert a claim entitled "Negligent Direction of LLCs."  Although the complaint is somewhat imprecise, when liberally construed, the Plaintiffs seem to allege that Bousbib was in charge of the Property LLCs and the Majority LLC owners and was the "final decision mak[er]," that as a result of his position and authority, he owed a duty of care to Merco,

the minority owner, and that he breached this duty by causing the Property LLCs to "repudiate" the agreements and expel it as a member.  ECF No. 19 at 68-69 ¶¶ 256, 259, 261-62.

"The essential elements of a cause of action in negligence are well established: duty; breach of that duty; causation; and actual injury." *Jagger v. Mohawk Mountain Ski Area, Inc*., 269 Conn. 672, 687 n. 13 (2004).  "[T]he existence of a duty of care is an essential element of negligence....A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." *Sturm v. Harb Dev., LLC*, 298 Conn. 124, 139–40 (2010).  "There is no question that a duty of care may arise out of a contract, but when the claim is brought against a defendant who is not a party to the contract, the duty must arise from something other than mere failure to perform properly under the contract." *D'Angelo Development & Construction Corp. v. Cordovano*, 121 Conn. App. 165, 186 (2010).  *See Burress v. Re-Innovation, Ltd.*, 2012 WL 5936064, at *5 (Conn. Super. Ct. Sept. 13, 2012) ("The plaintiff must allege facts either indicating the source of [defendant's] duty or allowing [defendant] to anticipate the harm alleged.")

Defendants argue that this claim is barred by the economic loss doctrine.  Under Connecticut law, "the economic loss doctrine bars negligence claims that arise out of and are dependent on breach of contract claims that result only in economic loss." *Ulbrich v. Groth*, 310 Conn. 375, 410 (2013).  I disagree.  It is not clear from the complaint that this claim would be entirely dependent on the breach of contract claims.  For example, the complaint does not suggest that all of the alleged negligent acts of Bousbib – such as his alleged failure to turn over books and records "upon demand by Plaintiffs," his alleged misrepresentations to Plaintiffs about their ownership in the Property LLCs and their financial compensation, his alleged hiring new,

inexperienced employees, and his alleged misuse of Plaintiff David Merenstein's signature – were govern by the operating agreements of the Property LLCs. *See* ECF No. 19 at 76-77 ¶¶262gg-nn. To the extent they were not, they may be independently actionable on negligence grounds.

The Defendants also argue that the claim fails because there is no duty under the circumstances of this case. But they have not offered authority that a managing member or majority owner of an LLC does not owe a duty of care to a minority owner and at this nascent stage of the litigation, I decline so conclude. The motion to dismiss count 18 is denied.

**C.    Counts 19 & 20: Conversion and Statutory Theft**

Counts 19 and 20, which allege conversion and statutory theft, incorporate the allegations that Bousbib deprived the Plaintiffs of ownership interests in the Property LLCs. In addition, Plaintiffs allege in count 19 that Bousbib "directed" LLC majority owners, "without authorization or authority, and used funds rightfully due to the Plaintiffs for his or its personal use and benefit" and that Bousbib either individually or through these entities possesses and controls $250,000 in equipment that belongs to David Merenstein and/or Detailmanagement. ECF No. 19 at 77 at ¶¶ 262-63. Count 20 incorporates this allegation and in addition, alleges that "Bousbib, individually and/or through his direction" of certain majority LLC owners, deprived Plaintiff of monies that belonged to them. *Id.* at 78 ¶ 264. Defendants argue that the claims should be dismissed because the alleged money at issue was a debt owed and therefore was not, as required, specific property in which Plaintiffs have a property interest.

"The tort of [c]onversion occurs when one, without authorization, assumes and exercises ownership over property belonging to another, to the exclusion of the owner's rights." *Hi-Ho Tower, Inc. v. Com-Tronics, Inc.*, 255 Conn. 20, 43 (2000) (internal quotation marks and citation omitted).

"Statutory theft under § 52-564 is synonymous with larceny under General Statutes § 53a-119." *Deming v. Nationwide Mut. Ins. Co*., 279 Conn. 745, 771 (2006). "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119.   "[T]he party alleging conversion or statutory theft must prove a sufficient property interest in the items in question." *Mystic Color Lab, Inc. v. Auctions Worldwide, LLC*, 284 Conn. 408, 419 (Conn. 2007).   While "money can be the subject of statutory theft," a plaintiff must initially establish the "legal ownership or right to possession of specifically identifiable moneys." *Deming*, 279 Conn. at 771-72.   That is, "a party must show ownership or the right to possess specific, identifiable money, rather than the right to the payment of money generally." *Mystic Color Lab*, 284 Conn. at 421.

Defendants correctly observe that Plaintiffs' allegations as to the "funds" are at most a denial of a contractual right to payment rather than conversion of specifically identifiable monies that they owned or had the right to possess.  *See Dr. Al Malik Off. for Fin. & Econ. Consultancy v. Horseneck Cap. Advisors, LLC*, No. 3:19CV1417(JAM), 2020 WL 3415622, at *3 (D. Conn. June 22, 2020).  The Plaintiffs' conversion and statutory theft claims, however, are also premised on the Defendants' alleged retention of equipment owned by Merenstein and/or Detailmanagement.  Thus, even though aspects of the claims fail (that is, the allegations regarding unpaid monies), the allegations as to the equipment suffice.  *See Pavelka v. Charter Commc'ns, Inc.*, No. 3:20CV1557(MPS), 2021 WL 5566390, at *4 (D. Conn. Nov. 29, 2021) (noting that "[i]t is doubtful that Rule 12(b)(6) authorizes a court to dismiss part of a single claim.")  As a result, the motion to dismiss counts 19 and 20 is denied.

15

**D.      Count 21: Breach of Fiduciary Duty**

In count 21, Plaintiffs allege Bousbib breached his fiduciary duties of loyalty and due care

to the Plaintiffs by failing to comply with the agreements and ousting Merco as an owner.   The

Defendants argue that the complaint fails to allege a legally cognizable fiduciary relationship.

"The essential elements to pleading a cause of action for breach of fiduciary duty under

Connecticut case law are":

> (1) That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on
> the part of the defendant to the plaintiff, (b) an obligation on the part of the
> defendant to act in the best interests of the plaintiff, and (c) an obligation on the
> part of the defendant to act in good faith in any matter relating to the plaintiff;
> (2) That the defendant advance[d] his own interests to the detriment of the plaintiff;
> (3) That the plaintiff sustained damages; (4) That the damages were proximately
> caused by the fiduciary's breach of his or her fiduciary duty.

*Edelson v. Chapel Haven, Inc*., No. 3:15CV1862(SRU), 2017 WL 810274, at *17 (D. Conn. Mar.

1, 2017).   A fiduciary relationship is "characterized by a unique degree of trust and confidence

between the parties, one of whom has superior knowledge, skill or expertise and is under a duty to

represent the interests of the other ... The superior position of the fiduciary or dominant party

affords him great opportunity for abuse of the confidence reposed in him."   *Falls Church Group,*

*Ltd. v. Tyler, Cooper and Alcorn, LLP*, 281 Conn. 84, 108 (2007).   Connecticut courts have

"recognized the existence of a fiduciary relationship, [where] the fiduciary was either in a dominant

position, thereby creating a relationship of dependency, or was under a specific duty to act for the

benefit of another."   *Hi-Ho Tower, Inc*, 255 Conn. at 38.   *See Southbridge Associates, LLC v.*

*Garofalo*, 53 Conn. App. 11, 18 (1999) ("a fiduciary relationship exists where there is a justifiable

trust confided on one side and a resulting superiority and influence on the other").

The Plaintiffs allege that Bousbib was "in the business of buying, selling and maintaining

properties," ECF No. 19 at 79 ¶ 262; "Plaintiffs trusted Bousbib [as to] his advice, leadership,

16

business knowledge and promises made," *id.* ¶ 264; Bousbib "acted as adviser and assisted Plaintiffs in their buy into the respective LLCs and acceptance of the management of the properties," *id.*; Bousbib was the "primary contact for any and all" of the alleged transactions entered into by the Plaintiffs, *id.* at 69 ¶ 258, Bousbib obtained all the agreements, and lending to purchase the properties, *id.* at 80 ¶ 265, and he had "extensive influence" over the Plaintiffs' interests, *id.* at 84 ¶ 267.  Drawing all reasonable inferences in the Plaintiffs' favor, they placed their confidence and trust in Bousbib, who was in the business of buying and maintaining rental properties.  Bousbib was the decisionmaker and driving force behind the business scheme - he directed their investment in the rental properties and controlled the LLC Majority Owners.  A reasonable inference is that Plaintiffs were not dealing with Bousbib at arm's length; rather, Bousbib was in a dominant position.  At this juncture, Plaintiffs have alleged sufficient facts related to a fiduciary relationship to render a claim plausible.[8]

The Defendants next argue that this claim is barred by the business judgment rule asserting, without more, that the "decision to terminate a management agreement is simply a business decision covered by the business judgment rule." ECF No. 29 at 26.  "The business judgment rule insulates corporate directors from liability for business decisions within the power of the corporation for which the directors have exercised due care." *Rosenfield v. Metals Selling Corp.*, 229 Conn. 771, 785 (1994) (footnotes omitted).  But the business judgment rule is an affirmative defense, *see, e.g.*, *Burt v. Snowberry Cobble Vill. Assn.*, 2021 WL 2459785, at *5 (Conn. Super. Ct. May 25, 2021)(referring to business judgment rule as special defense), which may not be considered on a motion to dismiss unless all the facts necessary to make out the defense are set

---

[8] In addition, as to Diamond Court, Fieldside Apartments, and Ivy Woods LLCs, the operating agreements indicate that Bousbib was the managing member.  Therefore, he owes these Property LLCs, and their members (which includes Merco) a fiduciary duty. *Bohn v. Dorothea L. Denton, LLC*, 2021 WL 4286568, at *25 (Conn. Super. Ct. Sept. 3, 2021).

forth in the complaint, which is not the case here.  Further, the Plaintiffs allege that Bousbib acted deceptively and without due care as to the allegedly improper removal of Merco as a member, depriving it of its rightful share of the compensation from the Property LLCs.  At this stage of the litigation, I decline to dismiss the breach of fiduciary claim on the grounds of the business judgment rule.[9]

### E.      Counts 22 & 23: Fraud and Fraud in Inducement/Constructive Fraud

In Counts 22 and 23, Plaintiffs allege that Bousbib made fraudulent representations that he would "act in accordance with the distribution and overall general business scheme" and "act in the best interests of the Property LLCs and the Plaintiffs."  ECF No. 19 at 83 ¶¶ 267-68. Defendants argue that Plaintiffs' fraud claims fail to satisfy Fed. R. Civ. P. 9(b).

To state a claim for fraud under Connecticut law, a plaintiff must allege "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Simms v. Seaman*, 308 Conn. 523, 548 (2013). "In federal court, the plaintiff must plead these elements with specificity." *Bell v. Univ. of Hartford*, No. 3:21CV934(MPS), 2021 WL 6063214, at *10 (D. Conn. Dec. 22, 2021).  To satisfy Rule 9(b), a plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004). In addition, "[a]lthough Rule 9(b) ... indicates that a plaintiff may allege scienter 'generally,' the Second Circuit has made it clear that plaintiffs in fraud cases must 'allege facts that give rise to a strong

---

[9] Defendants make a cursory argument that Plaintiffs' breach of fiduciary claim is foreclosed because they did not suffer harm, reasoning that the alleged "harm was due to a supposed contractual breach."  ECF No. 29 at 27.  They do not offer any authority in support of this as grounds for dismissal.

inference of fraudulent intent.'" *Ferry v. Mead Johnson & Co., LLC*, 514 F. Supp. 3d 418, 446 (D. Conn. 2021) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994)). "That strong inference 'may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* (quoting *Shields*, 25 F.3d at 1128).   "In federal court, claims for fraud in the inducement are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b)[.]" *Joshi v. Trustees of Columbia Univ. in City of New York*, 2018 WL 2417846, at *9 (S.D.N.Y. May 29, 2018).

I agree with Defendants that the allegations are too general to satisfy the heightened standard under Rule 9(b).  The amended complaint fails to specify the exact statements or state where or when the statements were made. The motion to dismiss counts 22 and 23 are granted.

**F.    Counts 24 & 25: Defamation *Per Se***

In counts 24 and 25, Plaintiffs allege libel and slander *per se* against Bousbib for the written and oral statements he made that, among other things, David Merenstein and/or Detailmanagement committed theft and that Merenstein committed a crime of trespass.  Defendants argue that the Plaintiffs' defamation claims should be dismissed because they are insufficiently pled**.**

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. Generally, spoken defamatory words are slander; written defamatory words are libel*." Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (citations and internal quotation marks omitted).   Under Connecticut law, a defamatory statement is "a communication that tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Levesque v. Town of Vernon*, 341 F. Supp.2d 126, 140 (D. Conn. 2004).   To establish a prima facie case of

defamation, a plaintiff must show that "(1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement." *Cweklinsky v. Mobil Chemical Co.*, 267 Conn. 210, 217 (2004) (internal quotations and citations omitted).   "Libel or slander is ... actionable per se if it charges a crime involving moral turpitude or to which an infamous penalty is attached." *Miles v. Perry*, 11 Conn. App. 584, 602 (1987). "The modern view of this requirement is that the crime be a chargeable offense which is punishable by imprisonment."  *Gleason v. Smolinski*, 319 Conn. 394, 431 n.31 (2015).

"Federal law, not Connecticut law, governs pleading in diversity cases." *Barbusin v. E. Connecticut State Univ.*, No. 3:05CV1171(RNC), 2006 WL 1313337, at *1 (D. Conn. May 11, 2006). "Thus, in a defamation case the liberal pleading standard of Fed. R. Civ. P. 8 is satisfied 'if the complaint provides sufficient notice of the communications complained of to enable the defendant to prepare a defense.'"  *Learning Care Grp., Inc. v. Armetta*, No. 3:13CV1540(VLB), 2014 WL 12651264, at *7 (D. Conn. Sept. 30, 2014) (quoting *Barbusin*, 2006 WL 1313337, at *1).   "Although the Second Circuit does not require *in haec verba* pleading, *i.e.*, of the exact alleged defamatory words," plaintiff must plead "what defamatory statements ... were made concerning the plaintiff, when they were made, [and] to whom they might have been made." *Abrahams v. Young & Rubicam*, 979 F. Supp. 122, 128 (D. Conn. 1997).  *See Neal v. Asta Funding*, *Inc.*, No. 13 CV 2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) ("Even under the more lenient federal standard, however, the amended complaint must at least 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.")  Applying those principles, I find that the Plaintiffs' allegations "provide sufficient notice of the communications complained

20

of to enable the defendant to prepare a defense." *Barbusin*, 2006 WL 1313337, at *1. The amended complaint alleges that "on or about April 30, 2020," Bousbib published false written statements to specified individuals that, among other things, Detailmanagement and/or David Merenstein committed theft in the course of managing the Property LLCs.  ECF No. 19 at 85-86 ¶¶ 268, 270a. As to the slander claim, the Plaintiffs' allegation that Bousbib made a false report that caused his arrest for trespass, although thin, is sufficient to put Bousbib on notice of the basic elements of the claim.  The motion to dismiss counts 24 and 25 is denied.

**G.     Count 26: Unjust Enrichment**

In count 26, Plaintiffs assert an unjust enrichment claim based on the allegation that Bousbib has certain equipment that belongs to the Plaintiffs in his possession and control. Defendants argues that the Plaintiffs failed to allege facts sufficient to state a plausible claim for unjust enrichment. Specifically, the Defendants assert that the complaint fails to allege facts that would establish the required element that Bousbib received a benefit from the equipment.  ECF No. 29 at 32.

"Unjust enrichment applies wherever justice requires compensation to be given for property or services rendered under a contract, and no remedy is available by an action on the contract." *Vertex, Inc. v. City of Waterbury*, 278 Conn. 557, 573 (2006).  The elements of an unjust enrichment claim are: "(1) that the defendant[ ] w[as] benefited, (2) that the defendant[ ] unjustly did not pay the plaintiff[ ] for the benefit, and (3) that the failure of payment was to the plaintiff[']s detriment."  *Town of New Hartford v. Connecticut Res. Recovery Auth.*, 291 Conn. 433, 452 (2009).

Construed liberally, the amended complaint alleges that the Plaintiffs provided the equipment to service the rental properties and that Bousbib retained possession of the equipment.

When reasonable inferences are drawn in favor of the Plaintiffs, one could reasonably infer that Bousbib's control and possession of the equipment used to service the rental properties inured to his benefit.  The motion to dismiss count 26 is denied.[10]

## H.   Leave to Amend

In their response to the motion to dismiss, the Plaintiffs requested leave to amend should the "Court find in favor of the Defendants on any one or more Counts and favor a dismissal[.]" ECF No. 32 at 28.  Because I find there would be no undue prejudice, bad faith, undue delay, or futility if leave to amend were granted, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), the Plaintiffs are granted leave to file an amended complaint.  Any such complaint shall be filed within 21 days of this order; the Court sets that deadline as part of a scheduling order, so no further amendments will be permitted after March 28, 2022.

## IV.   CONCLUSION

For these reasons, the Defendants' motion to dismiss under Rule 12(b)(6) is GRANTED as to counts 1-17, 22-23 and DENIED as to counts 18, 24-26.  The Court granted the parties' request to stay discovery and the filing of a Rule 26(f) report pending resolution of the motion to dismiss. ECF No. 37.  The stay is hereby lifted.  Within fourteen days of this ruling, the parties shall file a Rule 26(f) report

IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              March 7, 2022

---

[10] I decline to reach Defendants' conclusory assertion that the claim fails because "Plaintiffs seek recovery for a contract based claim against someone who is not a party to the contract[,]" ECF No. 36 at 14, because it was raised for the first time in a reply brief, se*e Cecchini v. Schenck*, No. 3:14CV1704(MPS), 2016 WL 777901, at *10 (D. Conn. Feb. 29, 2016), and unaccompanied by any legal analysis or authority.